IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TYE THOMAS, | : |
| Plaintiff, | : : : |
| v. | : Civil Action No. 21-708-RGA |
| WARDEN MAY, et al., | : : |
| Defendants. | : |

Tye Thomas, James T. Vaughn Correctional Center, Smyrna, Delaware.
Pro Se Plaintiff.

## MEMORANDUM OPINION

November 15, 2021
Wilmington, Delaware

*/s/ Richard G. Andrews*
**ANDREWS, U.S. District Judge:**

Plaintiff Tye Thomas, an inmate at James T. Vaughn Correctional Center in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983. (D.I. 3). Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 5). The Court proceeds to screen the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a).

## BACKGROUND

The following facts are taken from the Complaint and assumed to be true for purposes of screening the Complaint. *See Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

Plaintiff alleges retaliation in violation of the First Amendment, violations of the Due Process Clause under the Fourteen Amendment, and intentional infliction of emotional distress under Delaware law. (D.I. 3 at 1). Defendants are sued in their individual and official capacities. (*Id.* at 2-3).

Plaintiff began a hunger strike on March 29, 2021 due to lack of medical attention for his shoulder. (*Id.* at 3). The same day, Defendant Warden May was in Plaintiff's building, and May was notified of the hunger strike. (D.I. 3-1 at 1). May, along with Defendants Captain Reynolds, Lieutenant Faulkner, and Lieutenant Perez went to Plaintiff's cell. (*Id.*). Plaintiff alleges that May berated him, told him that he could either come off the hunger strike or go to the infirmary, and then told Reynolds and Officer White (not a defendant) to take Plaintiff to SHU (*i.e.*, Security Housing Unit). (D.I. 3 at

1

4).  As Plaintiff was leaving, Plaintiff overheard May tell Reynolds and Faulkner to make sure that he was written up.  (*Id.* at 5).

Plaintiff was taken to SHU and received a disciplinary report written by C/O White.  (*Id.*).  Plaintiff pled "not guilty," requested witnesses, an attorney, and the presence of "Mental Health" at the hearing due to his "serious mental illness."  (*Id.* at 6). Plaintiff asked why he was placed on "isolation status" since he was classified as seriously mentally ill and was told by Captain Dotson that the "warden does what he wants to black people."  (*Id.* at 7-8).

Plaintiff's disciplinary hearing was held on May 1, 2021, with Defendant Lieutenant Heishman presiding.  (*Id.* at 8).  Plaintiff explained that he did not understand the policy and made objections to the procedures Heishman was following.  (*Id.* at 8-10).  Heishman told Plaintiff that the warden had told him to find Plaintiff guilty.  (*Id.* at 9).  White, who wrote the disciplinary report, was at the hearing; when Plaintiff questioned her, she stated that May, Faulkner, and Reynolds told her to write the false disciplinary report.  (*Id.* at 10).  Plaintiff alleges the filing of a false disciplinary report constitutes the tort of intentional infliction of emotional distress.  (*Id.* at 14).  Heisman found Plaintiff guilty.  (D.I. 3 at 9; D.I. 3-1 at 2).  Plaintiff was sanctioned to five days confinement to quarters.  (D.I. 3-1 at 2).

After the hearing Plaintiff went on a hunger strike to protest the injustice of his hearing.  (D.I. 3 at 10).  On April 5, 2021, Defendant Major Shafer berated Plaintiff and yelled at him to come off the hunger strike because Plaintiff was making Shafer look

2

bad with the warden. (*Id.*). Shafer told Plaintiff if he did not come off the hunger strike that Plaintiff would be written up every day for "demonstration." (*Id.* at 11). Plaintiff asked why. Shafer responded, "because you are my property now boy and cuz da warden want it [this] way." (*Id.*). Plaintiff stopped the hunger strike because he was afraid of more retaliation. (*Id.*).

On April 3, 2021, Plaintiff appealed the disciplinary hearing finding of guilt; on April 7, 2021, Defendant Deputy Warden Natasha Hollingsworth denied the appeal. (*Id.* at 12). In the meantime, on April 5, 2021, Plaintiff to wrote to Defendant DOC Commissioner Claire DeMatteis and asked for her assistance in overturning the disciplinary report due to its false and retaliatory nature. (*Id.*). The same day, Plaintiff also wrote to Hollingsworth about the same thing. (*Id.*). Neither responded. (*Id.* at 13). Plaintiff alleges their failure to respond resulted in a depressive state that caused him "to cut his arms and legs, and [to bleed] profus[e]ly in an attempt to end his life." (*Id.* at 13).

Plaintiff seeks declaratory and injunctive relief and compensatory damages. (*Id.* at 14-17).

## SCREENING OF COMPLAINT

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448,

3

452 (3d Cir. 2013). *See also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94.

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020). "Rather, a claim is frivolous only where it depends 'on an "indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario.'" *Id*.

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§1915 and 1915A, the Court must grant Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

4

A well-pleaded complaint must contain more than mere labels and conclusions. See Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. See Johnson v. City of Shelby, 574 U.S.10 (2014). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. See id. at 11.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Connelly v. Lane Constr. Corp., 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## DISCUSSION

**Retaliation.** Having reviewed the allegations, Plaintiff has alleged what appears to be a retaliation claim against Warden May. He will be allowed to proceed with the claim against Warden May.

5

To the extent Plaintiff raises a retaliation claim against Shafer, the claim fails as there are no allegations that Shafer actually retaliated against Plaintiff, only that he threatened to. See Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (per curiam) (that defendant laughed at prisoner and threatened to hang him fails to state § 1983 claim).

**Due Process**. The allegations do not raise a due process claim. Plaintiff alleges that he received a false disciplinary report, that a hearing was held, he was found guilty, and received five days confined to quarters.

The filing of false disciplinary charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges. Crosby v. Piazza, 465 F. App'x 168, 172 (3d Cir. 2012) (citing Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002)). It is clear from the allegations that Plaintiff received a disciplinary hearing. He presented a defense. Therefore, to the extent he asserts a due process violation, the claim must be dismissed. In addition, because the false disciplinary charge claim fails as a matter of law, Plaintiff's claim that the issuance of the disciplinary charge constituted intentional infliction of emotional distress also fails.

To the extent Plaintiff alleges that he was subjected to disciplinary confinement without due process of law, the claim also fails. In Wolff v. McDonnell, 418 U.S. 539, 556 (1974), the Supreme Court held that prisoners must be accorded due process before prison authorities may deprive them of state created liberty interests. A prison disciplinary hearing satisfies the Due Process Clause if the inmate is provided with:

6

(1) written notice of the charges and not less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 563-71; *Griffin v. Spratt*, 969 F.2d 16, 19-20 (3d Cir. 1992). It is axiomatic that to be entitled to procedural due process protections as set forth in *Wolff*, a prisoner must be deprived of a liberty interest. *See Wolff*, 418 U.S. at 557-558.

The Due Process Clause itself confers no liberty interest in freedom from state action taken "within the sentence imposed." *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). State-created liberty interests protected by the Due Process Clause are generally limited to restraints on prisoners that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin*, 515 U.S. at 484).

In deciding whether a protected liberty interest exists under *Sandin*, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. *Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir. 2003) (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)). The nature of the test is fact-specific. *See Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (eight years in administrative confinement, during which inmate was locked in his cell for all

but two hours per week, denied contact with his family, and prohibited from visiting the library or "participating in any education, vocational, or other organization activities," implicated a protected liberty interest); *Smith v. Mensinger*, 293 F.3d 641, 645, 654 (3d Cir. 2002) (seven months in disciplinary confinement did not implicate a liberty interest), *Torres v. Fauver*, 292 F.3d 141, 151-52 (3d Cir. 2002) (disciplinary detention for fifteen days and administrative segregation for 120 days was not atypical treatment in New Jersey prisons and therefore did not implicate a protected liberty interest).

In this case, the allegations do not establish that the sanction of five days confinement to quarters constitutes an "atypical and significant hardship" sufficient to trigger a liberty interest. Plaintiff's confinement was five days and he was housed in SHU as are many inmates at JTVCC. Thus, Plaintiff fails to state a due process claim on the facts alleged. The claim will be dismissed.

## CONCLUSION

For the above reasons, the Court will: (1) allow Plaintiff to proceed on the retaliation claim against Warden May; and (2) dismiss all other claims and Defendants as the claims are legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

An appropriate Order will be entered.