IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TYE THOMAS, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 21-708-RGA |
| | : |
| WARDEN MAY, | : |
| | : |
| Defendant. | : |

Tye Thomas, Lawrence Correctional Center, Sumner, Illinois.
Pro Se Plaintiff.

Andrew Robert Fletcher, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Defendant.

**MEMORANDUM OPINION**

February 9, 2024
Wilmington, Delaware

/s/ Richard G. Andrews
**ANDREWS, U.S. District Judge:**

Plaintiff Tye Thomas, an inmate previously confined at the James T. Vaughn Correctional Center in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983.[1] (D.I. 3). He appears *pro se* and has been granted leave to proceed *in forma pauperis.* (D.I. 5). Before the Court is Defendant Warden May's motion for summary judgment. (D.I. 48).[2] Despite being granted an extension to respond (D.I. 55), Plaintiff never filed a response to the summary judgment motion.

### BACKGROUND AND FACTS ESTABLISHED BY THE RECORD

In March 2021, dissatisfied with the medical care he was receiving for a shoulder injury, Plaintiff began a hunger strike. Defendant and other staff members visited Plaintiff's cell. Following a confrontation with Defendant, an incident report was completed and Plaintiff was charged with demonstrations, threatening behavior, disrespect, and disorderly behavior. (D.I. 49-2, Ex. B). Per Delaware Department of Correction ("DDOC") Policy, Plaintiff was then transferred to Security Housing Unit ("SHU") 18B for monitoring during his hunger strike. Following an April 1, 2021 disciplinary hearing, Plaintiff was found guilty of demonstrations by a DDOC official, and disciplined with five days confinement to quarters. Plaintiff alleges that Defendant told the DDOC official to find him guilty.

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and the person who caused the deprivation acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

[2] All other Defendants and claims were dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A(a) in the Court's screening order. (D.I. 7, 8).

Plaintiff claims that Defendant retaliated against him for engaging in a hunger strike by sending him to the SHU, having him written up, and ordering that he be found guilty at his disciplinary hearing.

Defendant moves for summary judgment.

## LEGAL STANDARD

Rule 56(c) requires the court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

As a general rule, the court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

> Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations, quotations, and alterations omitted).

## DISCUSSION

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under Section 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). It has long been established that the First Amendment bars retaliation for protected speech. *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998); *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981).

Proof of a retaliation claim requires Plaintiff to demonstrate that: (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendant moves for summary judgment on the grounds that Plaintiff failed to produce evidence satisfying the elements of a First Amendment retaliation claim, *i.e.*, he failed to demonstrate that he was engaged in constitutionally protected conduct when he went on his hunger strike or that the hunger strike motivated Defendant to take an adverse action against him in retaliation, and that, even if Plaintiff could satisfy the elements of a retaliation claim, Defendant is entitled to qualified immunity.

3

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021) (internal quotation marks omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)).  The qualified immunity assessment involves two factors: (1) whether the plaintiff sufficiently alleged a right was violated, and (2) whether that right was clearly established when it was violated to the extent "that it would have been clear to a reasonable person that his conduct was unlawful." *Williams v. Sec'y Pennsylvania Dep't of Corrs.*, 848 F.3d 549, 557 (3d Cir. 2017).  The Third Circuit has emphasized the importance of "defin[ing] the right 'at the appropriate level of specificity,'" because "only then can we determine whether the violative nature of the [officials'] *particular* conduct is clearly established." *Clark v. Coupe*, 55 F.4th 167, 181 (3d Cir. 2022) (quoting *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012), and *Mullenix*, 577 U.S. at 12) (second alteration and emphasis in original).

The courts have not clearly established that a prisoner's participation in a hunger strike is protected by the First Amendment.  Courts tackling this question have offered persuasive reasons both for and against the establishment of such a right, sometimes

with a context-specific analysis.³ It is beyond dispute, however, that as of the time of Plaintiff's hunger strike in 2021, such a right had not been clearly recognized.⁴

Accordingly, the Court concludes that Defendant is entitled to qualified immunity and, therefore, summary judgment will be granted in his favor.

## CONCLUSION

For the above reasons, the Court will grant Defendant's motion for summary judgment.

An appropriate Order will be entered.

---

³ *See, e.g., Stefanoff v. Hays Cnty., Tex.*,154 F.3d 523, 527 (5th Cir. 1998) (holding that an inmate's "hunger strike *may* be protected by the First Amendment if it was intended to convey a particularized message," but that "so long as reasonable and effective means of communication remain open and no discrimination in terms of content is involved, prison officials are accorded latitude in fashioning restrictions on time, place and manner of communications") (emphasis added).

⁴ *See, e.g., Smith v. Annucci*, 2023 WL 3853655, at *16 (N.D.N.Y Feb. 28, 2023) ("It is questionable whether Plaintiff could sustain an argument that his hunger strike in the prison setting reflected constitutionally protected speech."); *Martirosyan v. Baries*, 2022 WL 2189537, at *11 (C.D. Cal. May 2, 2022) (noting that some district courts have held that a hunger strike, in some contexts, can be a protected activity, but "the Ninth Circuit has not explicitly held as such"); *Birdo v. Dave Gomez*, 214 F. Supp. 3d 709, 718 (N.D. Ill. 2016) (noting that neither the U.S. Supreme Court nor the Seventh Circuit has discussed whether an inmate has a constitutional right to engage in a hunger strike); *Brown v. McGinnis*, 2012 WL 267638, at *4 (W.D.N.Y. Jan. 30, 2012) ("The Second Circuit has upheld the practice of force-feeding inmates who are engaging in a hunger strike. Therefore, at a minimum, this holding confirms that an inmate's right to hunger strike as a First Amendment expression is not 'clearly established.'") (citation omitted); *Khaldun v. Daughtery*, 2009 WL 5170039, at *1 (S.D. Ind. Dec. 17, 2009) ("In particular, [plaintiff's] act of going on a hunger strike was not protected activity under the First Amendment[.]"); *see also Travillion v. Leon*, 248 F. App'x 353, 356 (3d Cir. 2007) (holding, under a somewhat distinguishable set of facts, that the inmate's "hunger strike" against vegetarian meals during Lent "was not constitutionally protected conduct...").